Eddie Cigelman Corporation v. Commissioner.
Eddie Cigelman Corp. v. Commissioner
Docket No. 50997.
United States Tax Court
T.C. Memo 1955-323; 1955 Tax Ct. Memo LEXIS 15; 14 T.C.M. (CCH) 1259; T.C.M. (RIA) 55323; December 9, 1955
*15 Benjamin Fischler, CPA, 401 Broadway, New York, N.Y., for the petitioner. Nathan M. Silverstein, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in the petitioner's income tax for 1949 in the amount of $2,303.05. The only issue is whether or not the petitioner was a corporation exempt from income tax during that year under either section 101(6) or 101(14) of the Internal Revenue Code of 1939. Findings of Fact The petitioner was incorporated under the General Corporation Law of the State of Delaware on or about November 4, 1948. It filed its corporation income tax returns for 1949 with the collector of internal revenue for the district of New York. Edgar M. Cigelman died from leukemia in August 1946 [1] at the age of 15 while a student at the Bronx High School of Science in New York City. Before his death, Edgar had told his father of a number of bright students at the High School of Science who had much to offer to the world if they could be assisted in obtaining an education. In honor of his memory, his parents, Abraham and Mary Cigelman, organized the Edgar M. Cigelman Foundation, Inc., (hereinafter *16 called the Foundation), a membership corporation under the laws of the State of New York on or about December 10, 1946. The purposes of the Foundation were to make scholarship grants to students, such as those described by their son, to make other grants to the High School of Science, to medical research foundations, especially to those working in fields dealing with leukemia, and to general philanthropic organizations. On August 27, 1948, the Commissioner of Internal Revenue advised the Foundation that it was exempt from Federal income tax under section 101(6) of the Internal Revenue Code of 1939. *tParagraph "THIRD" of the petitioner's Certificate of Incorporation provided in part as follows: "THIRD. The nature of the business, or objects or purposes to be transacted, promoted or carried on are: "To hold title to property, collect income therefrom and turn over the entire amount thereof, less expenses, to EDGAR M. CIGELMAN FOUNDATION INC., a corporation organized under the laws of the State of New York. "In furtherance of the objects and purposes herein set forth, it is expressly *17 provided that this corporation shall also have the following powers, viz: "To take, buy, purchase, exchange, hire, lease or otherwise acquire, real estate and property, either improved or unimproved, and any interest or right therein, and to own, hold, control, maintain, manage and develop the same in any state of the United States. * * *
"To erect, construct, maintain, improve, rebuild, enlarge, alter, manage and control, directly or through ownership of stock in any corporation, any and all kinds of buildings, houses, hotels, breweries, stores, offices, warehouses, mills, shops, factories, machinery and plants, and any and all other structures and erections which may at any time be necessary, useful or advantageous in the judgment of the board of directors for the purposes of the corporation and which can lawfully be done under the General Corporation Law. * * *
"To transact the business of buying and selling, dealing in, leasing, renting and managing real estate and any interest therein for its own account as agent or broker, or upon commission. * * * "To have and exercise all the powers conferred by the laws of Delaware upon corporations formed under the *18 General Corporation Law of the State of Delaware, and to do any or all of the things hereinbefore set forth to the same extent as natural persons might or could do." Petitioner was authorized to issue 250 shares of stock without par value. On November 15, 1948, 10 shares of stock were issued to the Foundation for $1,000. No other stock has ever been issued. Abraham, Mary, and their accountant, Benjamin Fischler, were the directors of petitioner. The first and, so far as the record discloses, the only meeting of petitioner's board of directors was held on November 15, 1948. The minutes of the meeting were prepared by the petitioner's accountant and read in pertinent parts as follows: "The Chairman, Mr. Abraham Cigelman, called the roll, and all of the directors were found to be present namely: Abraham Cigelman, Mary Cigelman, Benjamin Fischler "The chairman then stated that the object of the meeting was to complete the organization of the corporation and get it started by electing the officers, designating a depositary and such other incidental business. Mr. Benjamin Fischler then addressed the meeting and stated that in collaboration with the Corporation Trust Company he *19 had this corporation organized under the laws of Delaware, as the laws of New York do not permit the organization of a corporation whose income in its entirety must be paid over to a charitable organization, and no part of its income to go to stockholders as dividends or otherwise, as in the case of this company whose entire income must be paid over to a corporation EDGAR M. CIGELMAN FOUNDATION, that had been declared exempt from Income Tax by the Treasury Department. Mr. Fischler, emphasized, however that the corporation's activities are strictly passive. They are only to hold title of any property for the benefit of the beneficiary corporation, namely EDGAR M. CIGELMAN FOUNDATION INC. merely collect the income or rent from the property and turn it over to the said EDGAR CIGELMAN FOUNDATION INC. That it is therefore important for the directors and officers to confine themselves strictly to this passive role, and engage in no other activity except as a mere holding company, holding title and collecting the income and turning it over. That none of its funds can be diverted for any other purpose, and the Corporation Trust Company was asked to assist counsel to make certain that the company *20 will be formed to carry out this objective in view so that it will satisfy both in letter and spirit the Treasury Department's definition of a holding company within the meaning of section 102(14) [101(14)] and earn its exemption from Income Tax as all its funds would be paid over exclusively to the exempt corporation using the money for cancer research and other educational and philanthropic purposes. "Mr. Cigelman then had the floor, stating that the directors and officers would go even further, that none of them would draw a single penny for salaries, services or any compensation, but give their time and attention wholly without remuneration to aid the financial support of cancer research and promote the ideals of the boy in whose honor and memory these corporations were founded-EDGAR M. CIGELMAN. "A motion was duly made and seconded that the following be elected officers for the coming year: For President: Abraham Cigelman For Secretary: Mary Cigelman For Treasurer: Mary Cigelman" Abraham, Mary, their married daughter, and son-in-law were partners during 1949 and for some period prior thereto in an automobile agency doing business under the name of Acey Auto Sales, *21 hereinafter referred to as Acey. The agency occupied premises on West 133rd Street and West 134th Street in New York City owned by Victory Development Corporation and had done so since about 1946. No lease from Victory to Acey is in evidence and the record does not show the nature of Acey's tenancy. Abraham and Mary were the sole stockholders of Victory. On or about January 10, 1949, Victory leased the premises occupied by Acey to the petitioner for the term January 1, 1949, to December 31, 1949, at an annual rental of $12,000. The lease specified that the premises were "to be used and occupied only for the service station by the present occupant, an Oldsmobile agency." The lease was on a standard printed form and contained two inserts. The first authorized the tenant (petitioner) to assign or sublease the premises to Acey and the second gave the petitioner the option of renewing and extending the lease for another year at a rental of $13,000 per annum provided written notice was given not later than October 1, 1949. No written lease was executed between petitioner and Acey. However, Acey did pay to petitioner sums of money during 1949 and part of 1950 which were denominated "rents". *22 The cash receipts and disbursements of the petitioner for 1949 and for the period it continued to operate in 1950 were as follows: 1949
1950
Receipts ("Rent" from
Acey)
$24,999.96
$7,500.00
Disbursements: Victory
11,000.00
5,000.00
Foundation
10,000.00
4,000.00
Expenses
205.00
275.83
Total
$21,205.00
$9,275.83
Excess of receipts over
disbursements
$ 3,794.96
($1,775.83)
Balance of receipts
$ 3,794.96
$2,019.13
On December 29, 1948, petitioner and Victory entered into an agreement, which recited that Victory was about to "assign" to petitioner its lease to Acey for the purpose of aiding petitioner in accumulating funds to turn over to the foundation, and further recited that petitioner's application for exemption under section 101(14) could not be filed before the end of its fiscal year on December 1, 1949, and provided that if petitioner's application for exemption should be approved, then it should retain all monies collected by it under the lease, but if its application should be denied, then it should return to Victory from the rents collected by it the sum of $10,000 and should "consider the collections a reserve or trust fund *23 for this purpose until the decision of the Treasury Department, and not consider until such decision the said $10,000 as part of its assets or income." Opinion KERN, Judge: Petitioner claims that it was exempt from taxation during the taxable years under the provisions of either section 101(6) or section 101(14) of the Internal Revenue Code of 1939. [2]
*24 It would be easier to solve the problems posed by this proceeding if the operative facts were clearer. The nebulous and ambiguous character of the transactions disclosed by the record is evident in our findings; for example, the lack of evidence concerning the tenancy of Acey, the absence of any written lease or sublease from petitioner to Acey and the peculiar provisions of the contract of December 29, 1948, between petitioner and Victory. One obvious reason for the ambiguity of the transactions here involved is the fact that Victory, Acey, the Foundation and petitioner were all dominated by Abraham and Mary. Without any great certainty on our part we assume the facts to be that Victory leased the premises occupied by Acey to petitioner, that petitioner, with the consent of Victory, entered into some informal arrangement with Acey whereby Acey made payments to petitioner for its occupation of the premises, that these payments were to be retained by petitioner and used for its corporate purposes if it were ruled to be exempt from taxation, that if it were not ruled to be exempt from taxation it was to turn over to Victory the greater part of its net receipts, that until the ruling *25 as to exemption was obtained it was to retain as "a reserve or trust" for the benefit of Victory the greater part of its net receipts, and that contrary to its agreement with Victory and also contrary to its corporate purpose as recited in its Certificate of Incorporation of turning over the entire amount of its income less expenses to the Foundation, petitioner turned over approximately three fourths of its net income to the Foundation in 1949 and approximately seven eighths of its net income during the period of its activity. Bearing in mind that the purpose for which petitioner was organized is a question of fact which may be resolved by reference to its corporate charter, to evidence respecting the reasons for its formation and to evidence respecting its actual operation. (See Banner Building Co., 46 B.T.A. 857; Forest Press Inc., 22 T.C. 265, we conclude that petitioner was organized and operated for the purposes of entering into such real estate transactions with Victory and Acey as would result in its receipt of income, of turning over to the Foundation its net income if and on the condition that it were ruled to be exempt from taxation, and of turning *26 over to the Foundation, pending such a ruling, that part of its net income which Abraham and Mary (the controlling stockholders of Victory) saw fit to have it pay. It follows from this analysis of the facts and our conclusions based thereon that petitioner was not exempt from taxation under section 101(6). See Donor Realty Corporation, 17 T.C. 899; United States v. Community Services, Inc., 189 Fed. (2d) 421. It also follows that petitioner is not exempt from taxation under section 101(14) since it was not organized for the purpose of turning over the entire amount of its income less expenses to Foundation. We also have doubts as to whether it was organized for the exclusive purpose of holding title to property, but in view of our conclusion that it was not organized for the purpose of turning over the entire amount of its net income to a tax-exempt corporation, it is not necessary for us to resolve our doubts as to this question. Decision will be entered for respondent. Footnotes
1. So stipulated although evidence in the record indicates the date to be August 29, 1944.↩
2. SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS. The following organizations shall be exempt from taxation under this chapter - * * *
(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation; * * *
(14) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed by this chapter; * * *↩